### Illinois Central R. R. Co. v. Lucy Parkhurst.

1. RAILROADS—*Duty Toward Gratuitous Licensees.*—As to active or unstable surroundings or conditions, put in motion or caused by a railroad company, it owes to a licensee, upon its right of way, a degree of care reasonably commensurate to the known danger; but as to mere accommodations for travel and danger incident to fixed and long established conditions or surroundings, it owes such person no duty.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Effingham County; the Hon. WILLIAM M. FARMER, Judge presiding. Heard in this court at the August term, 1902. Reversed. Opinion filed March 2, 1903.

WOOD BROTHERS, attorneys for appellant; JOHN G. DRENNAN, of counsel.

S. F. GILMORE and RINEHART & RINEHART, attorneys for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case, in the Circuit Court of Effingham County, by appellee against appellant, to recover for a personal injury. Trial by jury. Verdict and judgment in favor of appellee for $250.

Appellant owned a strip of land 200 feet wide, which was occupied and in use by it as a right-of-way and switching yard, for its railroad. There were, prior to June 6, 1894, three tracks on the right-of-way at the point in question.

This was within the corporate limits of the city of Effingham. On the 6th day of June, 1894, the city of Effingham and appellant entered into an agreement as follows:

" This agreement, made and entered into by and between the Illinois Central Railroad Company, hereinafter called the Railroad Company, and the city of Effingham, hereinafter called the City, witnesseth: that whereas the City desires to obtain the use of a portion of the right-of-way of the Railroad Company for a crossing to be used by the public, without being subjected to the expense and delay that would ensue by a condemnation of such portion of the said right-of-way for street purposes, and has applied to the Railroad Company for permission to use such portion of its right-of-way, for the purposes aforesaid, without any compensation or damages to be paid therefor. Now, therefore, the Railroad Company has given and hereby does give to the City, without cost, compensation or consideration, a license to enter upon and use for the construction and maintenance of a roadway for vehicles and sidewalk for pedestrians the following described tract of land   *   *   * (describing, by metes and bounds, a strip sixty feet wide across the right-of-way).

This license is granted by the Railroad Company and is accepted by the City on the following express conditions, to wit:

1. That the use of said above described premises by the City shall not impair the use thereof by the Railroad Company for railroad purposes, and the Railroad Company reserves the right to construct at any time such additional tracts across the said premises as it may desire.

2. The Railroad Company will, at its own expense, put in, and during the continuance of this agreement maintain between the rails of each of the three or more tracks on said premises, and a foot on each side of the outer tracks, planking of the length of sixteen feet, so that said tracks may be crossed.

3. That the City will pay for the construction and keeping in repair of all sidewalks or roadways over said above described premises that it may see fit to order to be made and placed, and save and keep harmless the Railroad Company from any payment for the cost of construction or keeping in repair of said sidewalks or roadways.

4. That this license by the Railroad Company, and the acceptance thereof by the City, shall not establish, or tend to establish, any public or private street, avenue, or cross-

ing, across or upon said above described premises, and no user of said premises by the City or public shall establish, or tend to establish, any right of user of said premises by prescription.

5.   That the only right of use by the City or the public, of said premises for the purposes aforesaid, is by virtue of the above license, and not otherwise, and no time nor limitation nor statute of limitations shall begin to run against the Railroad Company by virtue of any such user by the City or the public, during the continuance of this license.

6.   So long as the City exercises the license granted by the Railroad Company herein, the Railroad Company shall not be required by the City to put in gates at the said crossing on the premises, or to keep or maintain a watchman or flagman or lights at said crossing.

7.   That whenever the City shall fail to observe or keep any of the conditions herein, this agreement shall be null and void, and the said license so granted the City by the Railroad Company shall cease and the parties hereto shall be restored to the situation existing before this agreement was made, to wit, the said premises above described, owned by the Railroad Company, with no stree tor crossing thereon, and no right of the City to any street or crossing thereon.

8.   That this license, and the use by the City or the public, of said premises, shall not be used as a basis of any claim by the City or the public, of any right, easement or servitude upon or over said above described premises.

9.   That if the City shall hereafter conclude to attempt the condemnation of said premises, or any part thereof, for a street, or crossing, then this contract shall end, and the parties hereto shall be in precisely the position they were before the execution hereof, and this agreement and license, or what may be done under the same, shall not impair the rights of the Railroad Company in said above described premises in any way.

10.   That this license may be terminated on giving reasonable notice in writing of a desire to terminate the same, such reasonable notice to be not less than sixty days before the time mentioned for the termination of the license in the said notice.   And the premises shall be restored on such termination to the present condition, and the parties to be in the same condition as if no license had been granted, or any use of said premises had by the City or the public.

The City hereby accepts the license aforesaid, and agrees

to be subject to the conditions above named, but nothing herein shall be construed to prevent the City at any time it shall see fit, after sixty days' notice in writing of the termination of this agreement, to exercise its right of eminent domain, under the laws of the state, and begin proceedings for the condemnation of said premises or any part thereof, subject, however, to the above terms of this agreement."

The foregoing agreement was duly executed. Appellant put down the sixteen-foot planking specified in the contract, and the City put down plank sidewalks up to the outside rails on each side, and the public began to use the crossing. Appellant continued to use its premises at this point as it had done before, as a car yard where cars were stored, and as a switching yard where trains were made up; and after the making of the contract, added two additional tracks, and constructed a system of signals and interlocking switches. This was done about two years before the time of the injury complained of. So at the time of the injury and for two years prior thereto, appellant maintained and had in use at the place in question five railroad tracks, with the tops of the rails extending from five to seven inches above the surface, and the signal wires of their interlocking switch system which lay between the first and second tracks at a height of from two to four inches above the surface. All these were in use by appellant for railroad purposes.

Appellee had resided in the immediate neighborhood for three years and was fully acquainted with all the conditions. She lived on the east side of the railroad and her son lived on the west side. On her way home from her son's, about four o'clock in the afternoon, in crossing the railroad premises she caught her foot upon the interlocking switch wires, fell, and sustained injuries to her hand and wrist.

The contract between appellant and the City does not constitute the strip of land across appellant's right-of-way a public highway, nor, as between appellant and the City, does it cast upon appellant any burden or duty not within the terms of the contract.

It is contended by counsel for appellee that while this may be true, the public are not, as individuals, bound by the limitations expressed in the contract.

However this may be, the strip of ground where the alleged obstruction was, and where the injury occurred, was not a public highway. And whether appellee went there under the City's license and was subject to its limitations, or by permission of appellant as evidenced by its conduct toward the public, still she was only a gratuitous licensee, and her rights must be determined by the measure of appellant's duty to such persons, under similar circumstances. As to active or unstable surroundings or conditions, put in motion or caused by a railroad company, it owes to a licensee, upon its right-of-way, a degree of care reasonably commensurate to the known danger; but as to mere accommodations for travel and danger incident to fixed and long established conditions or surroundings, it owes such person no duty. Illinois Central R. R. Co. v. Eicher, 100 Ill. App. 599 (601).

In the case at bar, the surroundings and conditions complained of were stable, fixed and long established; besides, they were all fully known to appellee before and at the time of the injury.

The judgment of the Circuit Court is reversed.

The court finds as facts in this case, that the defendant was not guilty of the negligence charged in the declaration, nor of any negligence causing appellee's injury as charged in her declaration.